[No. 6660–2–II. Division Two. April 17, 1985.]

PUGET SOUND NATIONAL BANK, *Respondent,* v.
HONEYWELL, INC., *Appellant.*

*Rudy A. Englund,* for appellant.

*James M. Hushagen,* for respondent.

REED, A.C.J.—Honeywell appeals from a judgment that awarded certain computer equipment to Puget Sound National Bank. We affirm.

Prior to 1978 Computer Accounting Incorporated (CAI) provided accounting services to Pacific Mountain Corporation (PMC). PMC was in the market for a computer to perform its accounting needs. CAI suggested to PMC that CAI purchase a computer for PMC under a contractual arrangement whereby CAI would maintain the computer hardware at CAI's office and create a software program for PMC. Eventually the parties agreed upon the purchase of a Honeywell computer system.

On May 26, 1978, CAI entered into an "Original Equipment Manufacturer" (OEM) contract with Honeywell to sell the latter's computers. This document provided that a security interest would be retained in any equipment Honeywell delivered to CAI until CAI's "obligations are paid in full." CAI then confirmed existing orders with Honeywell for two computer systems, one for PMC and one for CAI. In June of 1978, CAI prepared. and forwarded a written purchase agreement to PMC which provided that most of the equipment would remain in possession of CAI and would be used by CAI when not in use by PMC. Apparently this agreement was never signed but its provisions controlled the transaction between CAI and PMC.

Although Honeywell admits that it consented to the sale to PMC, it nevertheless perfected its security interest in the proceeds of the sale by filing a financing statement on July 10, 1978.

In late September or early October of 1978, CAI and PMC agreed that a subsidiary of PMC, Consolidated Commercial Investors Corporation (CCIC), would be substituted as purchaser. On October 4, 1978 CAI furnished CCIC with a detailed invoice for the equipment. CCIC accepted the invoice. At or about the same time the two companies agreed on a lease of the equipment to CAI, apparently to secure certain beneficial tax treatment. On October 9, 1978, to finance this transaction, CCIC executed a loan agreement with Puget Sound National Bank whereby CCIC granted the bank a security interest in the computer. On October 20, 1978, the bank filed its financing statement. The computer was delivered to CAI, but could not be made to function properly. CCIC paid CAI in full for the system. CAI refused to pay Honeywell, CCIC defaulted on its loan, and the bank brought and won a replevin action to acquire possession of the collateral. In a separate settlement CAI granted the bank possession of additional computer equipment not covered by the latter's security agreement. On appeal, Honeywell asserts that it holds a superior security interest in the Model 33 computer and also is entitled to the other property given the bank in its settlement with CAI. We disagree.

■ Under RCW 62A.9–312(5)(a), priority between conflicting perfected security interests in the same collateral is determined by the order in which the parties file or perfect their interests. Although Honeywell was the first to file its financing statement and its interest ordinarily would continue despite a later sale of the collateral, an exception to this general rule pertains where the transaction is "authorized by the secured party in the security agreement or otherwise". RCW 62A.9–306(2). Honeywell concedes it consented to the sale, but claims it "conditioned" this authorization by providing in its security agreement that the

interest would be retained until CAI's "obligations are paid in full." Although a secured party can condition its consent, *Southwest Wash. Prod. Credit Ass'n v. Seattle–First Nat'l Bank,* 92 Wn.2d 30, 34, 593 P.2d 167 (1979), there is no evidence that Honeywell *actually* imposed such a condition.

Nowhere in Honeywell's security agreement can an express limitation on resale be found, and the provision cited by defendant at most only restates the general rule of RCW 62A.9–306(2) concerning the continuation of security interests. Further, even if the agreement had included a sufficiently clear condition, Honeywell would not be precluded from later expressly or impliedly waiving the same. *Central Wash. Prod. Credit Ass'n v. Baker,* 11 Wn. App. 17, 20–21, 521 P.2d 226 (1974). Honeywell admittedly authorized the sale and relies solely on its vague "paid in full" clause to prove the authorization was conditional. By rejecting Honeywell's proposed finding on the point, the trial court found that Honeywell in fact had *not* acted to condition its consent. *See Dickson v. United States Fid. & Guar. Co.,* 77 Wn.2d 785, 791, 466 P.2d 515 (1970). None of Honeywell's citations to the record justifies a contrary conclusion. Accordingly, upon CAI's disposition of the collateral, Honeywell no longer had an enforceable security interest in the computer. *See American State Bank v. Avco Fin. Servs. of United States, Inc.,* 71 Cal. App. 3d 774, 139 Cal. Rptr. 658, 665 (1977).

Honeywell's claim is also unenforceable because it is subject to yet another exception to the general rule regarding the continuation of security interests. Under RCW 62A.9–307(1), "[a] buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." *See Southwest Wash. Prod. Credit Ass'n v. Seattle–First Nat'l Bank,* 92 Wn.2d at 33. A "buyer in ordinary course of business", in turn, is one "who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a

third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . ." RCW 62A.1–201(9). Here, in the ordinary course of business, CCIC contracted to purchase the computer from CAI who, under its OEM agreement with Honeywell, was in the business of selling goods of that kind. Honeywell does not deny that CCIC acted in good faith and without knowledge that the sale violated the manufacturer's security interest; rather, it asserts that the "sale" was never completed because the transaction (1) was a sale on approval, (2) was canceled before completion, and (3) the goods never were delivered to CCIC.[1] We disagree with Honeywell's position.

Honeywell cites nothing from the record to support its claim that anything other than an outright, unconditional sale to CCIC took place. Its references in support of a "cancellation" show only that CAI *attempted* to cancel *its* order from Honeywell, but later accepted delivery and began using portions of the equipment to construct an operating system for CCIC. Furthermore, possession of the collateral is not a prerequisite to becoming a "buyer in ordinary course" where the buyer nevertheless has obtained title to the collateral. *See Holstein v. Greenwich Yacht Sales, Inc.*, 122 R.I. 211, 404 A.2d 842, 845 (1979); *cf. Chrysler Corp. v. Adamatic, Inc.*, 59 Wis. 2d 219, 208 N.W.2d 97, 107 (1973) (title did not pass to partially assembled coil winders because not in a deliverable state). Absent an agreement to the contrary, title passes upon contracting where the goods are not to be moved, are identified to the contract and no documents of title are to be delivered. RCW 62A.2–401(3)(b). Here, the computer was to be operated for CCIC on CAI's premises. The collateral "existed" and was identified to CCIC's contract to purchase

---

[1]Although Honeywell uses the term "sale on approval," no reference is made to RCW 62A.2–326(1), nor are we directed to any authority on point.

Honeywell also argues that the "convoluted nature" of the transaction somehow prevented CCIC from becoming a "buyer," but cites no legal authority in support of this claim. We therefore decline to address the issue. RAP 10.3(a)(5); *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 290, 669 P.2d 451 (1983).

at least by the time it was described in CAI's invoice of October 4, 1978. RCW 62A.2–501(1)(a). Honeywell never has claimed that documents of title were to be delivered. Hence CCIC qualified as a buyer in the ordinary course of business and took free of the security interest created by its seller, CAI.[2] *See International Harvester Credit Corp. v. Associates Fin. Servs. Co.,* 133 Ga. App. 488, 211 S.E.2d 430, 433–36 (1974).

Honeywell next asserts that, even if the bank was entitled to the Model 33 computer, it was not entitled to other equipment relinquished by CAI as part of a settlement. The record does indicate that certain items described in Honeywell's financing statement were not included in the bank's financing statement. Further, the court found that the bank did not have a security interest in some of the equipment acquired from CAI. It is true that a security interest is not enforceable against a third party unless the security agreement includes a description of the collateral, RCW 62A.9–203(1)(a). It also is true that collateral not listed in a financing statement is not encumbered. RCW 62A.9–402(1); J. White & R. Summers, *Uniform Commercial Code* § 23–16, at 961 (2d ed. 1980). Thus, if we could identify these items, we would have to grant Honeywell's request they be awarded to it. However, Honeywell fails to cite to any place in the record that demonstrates that the additional collateral listed only in its financing statement is the *same equipment* awarded the bank in its settlement with CAI.[3] Accordingly, we are unable to decide this issue. RAP 10.3(a).

 Puget Sound National Bank claims the right to an

---

[2]Honeywell additionally argues that the bank was not a "secured party," both because CCIC lacked sufficient "rights" in the collateral, former RCW 62A.9–204(1), and because the loan proceeds were used improperly. RCW 62A.9–107(b). Our conclusion that Honeywell lost its security interest in the collateral, both by its unconditional consent and by CCIC's status as a buyer in ordinary course, makes an analysis of these issues unnecessary.

[3]We carefully have examined those portions of the record cited by Honeywell but are still unable to make the connection urged upon us.

award of attorney's fees on appeal "pursuant to RCW 7.64-.035." That statute, however, applies only to rulings of a "judge or court commissioner, at the hearing on the order to show cause" in a replevin action. Having failed to assert a valid ground for the award *on appeal,* the bank's request for attorney's fees will be denied.

Judgment affirmed.

ALEXANDER and GROSSE, JJ., concur.