[No. 19801-7-I. Division One. May 31, 1988.]

KEITH MILTON RHINEHART, ET AL, *Appellants,* v. THE SEATTLE TIMES COMPANY, ET AL, *Respondents.*

*Jean Schiedler–Brown,* for appellants.

*Bruce E.H. Johnson, Howard Stambor, Davis, Wright & Jones, Evan L. Schwab,* and *Bogle & Gates,* for respondents.

SWANSON, J.—Keith Milton Rhinehart; the Aquarian Foundation, a Washington not–for–profit corporation; Ilse Taylor; and Lillian Young[1] appeal the superior court order which dismissed their action for damages for defamation

---

[1]At oral argument appellants' counsel argued for the first time in this appeal that the dismissal of the action as to Ilse Taylor and Lillian Young was improper as a sanction for noncompliance with discovery since these individuals lacked custody of or control over the requested videotape and films. At the January 7, 1987, hearing at which the appellants' action was dismissed as a discovery sanction, the respondents' counsel argued that the female plaintiffs were suing in a representative, not individual, capacity on behalf of all women members of the Aquarian Foundation as of March 17, 1978. The complaint appears to substantiate this contention.

In any event, appellants Taylor and Young do not claim, and the record does not indicate, that they responded to the request for production of the videotape and films by stating that the tapes were not in their possession, control or custody. *See La Chemise Lacoste v. Alligator Co.,* 60 F.R.D. 164 (D. Del. 1973). Absent a timely response or objection to a discovery request, the right to object may be waived. *Fretz v. Keltner,* 109 F.R.D. 303, 309 (D. Kan. 1985); 4 L. Orland, Wash. Prac., *Rules Practice* § 5427, at 153 (3d ed. 1983).

Moreover, appellants Taylor and Young have provided no argument or citation to legal authority in the appellate briefs in support of this contention. RAP 10.3(a)(5); *Lassila v. Wenatchee,* 89 Wn.2d 804, 809, 576 P.2d 54 (1978); *Puget*

and invasion of privacy against the Seattle Times Company, a Delaware corporation d/b/a the Seattle Times; Walla Walla Union–Bulletin, Inc.; Erik and Jane Doe Lacitis, husband and wife; John and Rebecca Karen Wilson, husband and wife; and John and Karen McCoy, husband and wife. This appeal presents the following issues:

1. Did the dismissal of the appellants' complaint for noncompliance with the order compelling discovery of the films and videotape violate the appellants' right to the free exercise of religion?

2. Was discovery of the Aquarian Foundation's members' names and addresses protected by the priest–penitent privilege?

3. Was the dismissal of the appellants' complaint for noncompliance with discovery an abuse of discretion?

4. Did the trial court err in denying the appellants' motion for a change of judge?

5. Should the appellants be assessed terms for a frivolous appeal?

The facts underlying the action in this case and preceding this appeal have been set forth in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 22–27, 81 L. Ed. 2d 17, 104 S. Ct. 2199, 2202–04 (1984) in part as follows:

> . . . Rhinehart is the spiritual leader of a religious group, the Aquarian Foundation. . . .
>
> In recent years, the Seattle Times and the Walla Walla Union–Bulletin have published stories about Rhinehart and the Foundation. Altogether 11 articles appeared in the newspapers during the years 1973, 1978, and 1979. The five articles that appeared in 1973 focused on Rhinehart and the manner in which he operated the Foundation. They described seances conducted by Rhinehart in which people paid him to put them in touch with deceased relatives and friends. The articles also stated that Rhinehart had sold magical "stones" that had been "expelled" from his body. One article referred to

---

*Sound Nat'l Bank v. Honeywell, Inc.*, 40 Wn. App. 313, 317 n.1, 698 P.2d 584 (1985). We thus do not address this issue.

Rhinehart's conviction, later vacated, for sodomy. The four articles that appeared in 1978 concentrated on an "extravaganza" sponsored by Rhinehart at the Walla Walla State Penitentiary. The articles stated that he had treated 1,100 inmates to a 6–hour–long show, during which he gave away between $35,000 and $50,000 in cash and prizes. One article described a "chorus line of girls [who] shed their gowns and bikinis and sang . . . . " . . .

Rhinehart brought this action in the Washington Superior Court on behalf of himself and the Foundation against the Seattle Times, the Walla Walla Union–Bulletin, the authors of the articles, and the spouses of the authors. Five female members of the Foundation who had participated in the presentation at the penitentiary joined the suit as plaintiffs. The complaint alleges that the articles contained statements that were "fictional and untrue," and that the defendants—petitioners here—knew, or should have known, they were false. According to the complaint, the articles "did and were calculated to hold [Rhinehart] up to public scorn, hatred and ridicule, and to impeach his honesty, integrity, virtue, religious philosophy, reputation as a person and in his profession as a spiritual leader." With respect to the Foundation, the complaint also states: "[T]he articles have, or may have had, the effect of discouraging contributions by the membership and public and thereby diminished the financial ability of the Foundation to pursue its corporate purposes." The complaint alleges that the articles misrepresented the role of the Foundation's "choir" and falsely implied that female members of the Foundation had "stripped off all their clothes and wantonly danced naked . . . ." The complaint requests $14,100,000 in damages for the alleged defamation and invasions of privacy.

Petitioners filed an answer, denying many of the allegations of the complaint and asserting affirmative defenses. Petitioners promptly initiated extensive discovery. They deposed Rhinehart, requested production of documents pertaining to the financial affairs of Rhinehart and the Foundation, and served extensive interrogatories on Rhinehart and the other respondents. Respondents turned over a number of financial documents, including several of Rhinehart's income tax

returns. Respondents refused, however, to disclose certain financial information, the identity of the Foundation's donors during the preceding 10 years, and a list of its members during that period.

Petitioners filed a motion under the State's Civil Rule 37 requesting an order compelling discovery. . . . Respondents . . . moved for a protective order preventing petitioners from disseminating any information gained through discovery. . . .

In a lengthy ruling, the trial court initially granted the motion to compel and ordered respondents to identify all donors who made contributions during the five years preceding the date of the complaint, along with the amounts donated. The court also required respondents to divulge enough membership information to substantiate any claims of diminished membership. Relying on *In re Halkin,* 194 U. S. App. D. C. 257, 598 F.2d 176 (1979), the court refused to issue a protective order. It stated that the facts alleged by respondents in support of their motion for such an order were too conclusory to warrant a finding of "good cause" as required by Washington Superior Court Civil Rule 26(c). . . .

Respondents filed a motion for reconsideration in which they renewed their motion for a protective order. They submitted affidavits of several Foundation members to support their request. . . .

Persuaded by these affidavits, the trial court issued a protective order covering all information obtained through the discovery process that pertained to "the financial affairs of the various plaintiffs, the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various plaintiffs." The order prohibited petitioners from publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case. By its terms, the order did not apply to information gained by means other than the discovery process.

(Footnotes and citations omitted.)

Upon cross petitions for review, our State Supreme Court upheld the protective order against an attack on the basis of freedom of the press and of speech and the June 26,

1981, order compelling discovery against a challenge on grounds of violations of the rights of privacy and of association. *Rhinehart v. Seattle Times Co.,* 98 Wn.2d 226, 257–58, 654 P.2d 673 (1982), *aff'd,* 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984). The United States Supreme Court denied the appellants' petition for certiorari, 467 U.S. 1230 (1984), but granted the respondents' petition and upheld the protective order, *Seattle Times Co. v. Rhinehart,* 467 U.S. at 37.

During this time the original trial judge, who had moved to the State Court of Appeals, was replaced in the instant case by another judge. Upon the respondents' motion, the appellants were ordered to comply with the June 26, 1981, order compelling discovery by October 19, 1984. On that date, the appellants supplied nonresponsive and incomplete answers. In December 1984, the respondents served the appellants with a request for production of certain films and a videotape of the Walla Walla performance. The appellants did not file timely objections or responses.

A challenge to the same requests for production was pending in this court. In *Rhinehart v. KIRO,* 44 Wn. App. 707, 708–09, 723 P.2d 22 (1986), *review denied,* 108 Wn.2d 1008, *appeal dismissed sub nom. Rhinehart v. Tribune Pub'g Co.,* 108 S. Ct. 51 (1987), this court held that the order compelling discovery of the films and videotape did not violate the appellants' freedom of religious exercise. *KIRO,* at 711, further upheld the dismissal of the appellants' action against the respondents in that appeal for noncompliance with discovery.

In the instant case a scheduled October 31, 1986, hearing on the respondents' motions for dismissal for noncompliance with the 1981 discovery order and for a second order compelling discovery of the films and videotape was continued at the appellants' request because of a substitution of counsel. At this hearing the appellants' request for a change of judge was denied. At the rescheduled December 5, 1986, hearing, the trial judge dismissed the complaint of Rhinehart, the Aquarian Foundation and Kathi Bailey for

noncompliance with the June 26, 1981, order compelling discovery; ordered the production by December 15, 1986, of the films and videotape requested by the respondents; and denied the appellants' motions for a protective order and for clarification of the June 26, 1981, discovery order.

The appellants did not comply with the December 5, 1986, order compelling discovery. After a January 7, 1987, hearing, the trial judge entered findings of fact and conclusions of law and dismissed the complaint of all the plaintiffs for failure to comply with the December 5, 1986, order compelling discovery and denied the appellants' motion for reconsideration of the prior orders. This appeal followed. After oral argument the respondents filed a motion for leave to correct or supplement the record pursuant to RAP 9.10, which motion, unopposed by the appellants, was granted.

### FREE EXERCISE OF RELIGION

The appellants contend that their First Amendment rights were violated by the dismissal of their complaint for noncompliance with the order compelling discovery of the films and videotape, which the appellants claim are sacred objects. The respondents assert that the claim that the tapes' sanctity precludes discovery is suspect in light of the television broadcast to the public of the films and the fact that the videotape was of a performance before 1,100 prison inmates. They further contend, without dispute, that upon the December 1984 service of the request for production of the films and videotape, the appellants failed to object within the time period required by CR 34(b). Consequently, they argue, any objection has been waived.

> A waiver of the right to object or of a protective order may result from a failure timely to respond or object [to a request for the production of documents]. *Alexander v. Parsons* (D.C.Mich.1977) 75 F.R.D. 536; *Perry v. Golub* (D.C.Ala.1976) 74 F.R.D. 360; *Leve v. Schering Corp.* (D.C.N.J.1975) 73 F.R.D. 537, *affirmed* (C.A.3d) 556 F.2d 567, *certiorari denied* 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93.

4 L. Orland, Wash. Prac., *Rules Practice* § 5427, at 153 (3d ed. 1983). In any event, we find no First Amendment violation.

The appellants argue that the denial of a requested protective order resulted in the violation of their right to the free exercise of religion since they were compelled to provide discovery of what they consider to be sacred objects without a proper protective order. The only protective order entered in the instant case is limited to discovery of membership, donor and financial information which was compelled by the June 26, 1981, order and restricts use of the discovery information to litigation purposes.

On November 26, 1986, the appellants filed a motion for a protective order as to discovery of the films and videotape which would have imposed the following restrictions:

2. Plaintiffs may comply with defendant Seattle Times' Second Request for Production of Documents as follows:

(a) by allowing defendants to view the relevant portions of the films and videotapes requested therein in which the identities of person[s] depicted in the films and videotapes have been obscured.

(b) that defendants need only produce for viewing such portions of the films and videotapes as defendants reasonably specify will provide information likely to lead to admissible evidence.

(c) that defendants be prohibited from making any public disclosure of the films or making any use thereof except for the legitimate purposes of preparing for trial and no portions thereof should be entered into [the] public record without further order of this court.

The motion expressly states that the proposed protective order sought to permit compliance with production by allowing the respondents to view the films and videotape in the church. Besides limiting the films' use to litigation purposes, the requested protective order, unlike the prior protective order entered in the case, sought to impose certain other restrictions and conditions.

The respondents argue that *Rhinehart v. KIRO,* 44 Wn. App. 707, 723 P.2d 22 (1986), *review denied,* 108 Wn.2d

1008, *appeal dismissed sub nom. Rhinehart v. Tribune Pub'g Co.*, 108 S. Ct. 51 (1987), is controlling. In *KIRO*, at 708–09, an order compelling discovery of the three video-tapes at issue in the instant case survived a challenge on grounds of a violation of the freedom to exercise religion. *KIRO*, at 709, notes that no showing was made that the protective order was inadequate to prevent abuse of discovery. The protective order in *KIRO* is similar to the 1981 protective order entered in the instant case in limiting the use of the discovery information to litigation purposes. *KIRO*, at 708.

The 1981 protective order was found not to violate freedom of the press or of speech. *Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 256, 654 P.2d 673 (1982), *aff'd*, 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984). Thus had the appellants sought such a protective order as to the compelled discovery of the films and videotape, it could not have been attacked on these First Amendment grounds. Instead, the appellants sought a protective order which would have imposed other restrictions and conditions. *Rhinehart*, at 257, states:

> The more extensive protection which [the plaintiffs] desire is within the discretion of the trial court in a proper case; but the plaintiffs are not entitled to such an order as a matter of right.

The appellants here had no absolute right to a more extensive protective order.

▇▇ CR 26(c) sets forth the procedure for requesting a protective order:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .

*See Rhinehart*, at 232. "'[G]ood cause' is established if the moving party shows that any of the harms spoken of in the

rule is threatened and can be avoided without impeding the discovery process." *Rhinehart,* at 256.

The appellants argue that the protective order was necessary to satisfy their objections to the discovery based upon privacy concerns, the priest–penitent privilege and the sacredness of the tapes. However, any objections to disclosure based upon privacy, the confidentiality of members' identities, and the showing of the tapes outside the sanctity of the church are difficult to justify since two of the requested tapes have already been broadcast to the public on television. *Rhinehart v. KIRO, supra* at 708–09. Further, the 1981 protective order prohibited the nonlitigation use of information regarding the members' identities acquired through the discovery process.

To be weighed against the appellants' asserted interests are the interests of the respondents, who are seeking discovery in order to prepare their trial defense. *See Rhinehart v. Seattle Times Co., supra* at 256. As both *Rhinehart v. Seattle Times Co., supra* at 257–58, and *Rhinehart v. KIRO, supra* at 709, note, the appellants "are attempting to assert a privilege to withhold evidence in a private suit where they seek damages based upon the allegedly privileged information." In requesting the particular protective order that they proposed, the appellants have failed to make the requisite "good cause" showing that any of the harms mentioned in the rule was threatened and could be avoided without impeding the discovery process. *Rhinehart v. Seattle Times Co., supra* at 256. The trial court did not abuse its discretion in denying the request for the more extensive protective order. *Rhinehart,* at 257.

Even if the refusal to issue the proposed protective order was not an abuse of discretion, the question is whether the order compelling the production of the films and videotape violated the appellants' right to the free exercise of their religion. Like the court in *Rhinehart v. KIRO, supra* at 708–09, we find meritless the appellants' argument that their freedom to exercise religion was violated by the order

compelling discovery of the tapes. The cases upon which they rely involve restrictions on the free exercise of religion and are inapposite. The discovery order here did not impinge upon their right to the free exercise of religion.

As *KIRO,* at 709, notes:

> Rhinehart and the Foundation are willing to allow KIRO and KOMO to view the "sacred" tapes. Their main objection is to their copying. It is thus not against their religious principles that these tapes may be viewed by persons other than members (such a position would be hard to maintain since two of the tapes had already been broadcast to the public at large). Rather, the appellants fear that the tapes will be disseminated to the public at large thus putting members at risk. It was precisely because of this argument that the trial court issued the protective order. The arguments propounded by appellants are really ones that should be made in support of an invasion of privacy action. Having lost this argument already, it appears that appellants are substituting religious freedom in its place.

Here the 1981 protective order shields the appellants against abuse of discovery related to the members' identities. In *Rhinehart v. Seattle Times Co., supra* at 257, our State Supreme Court found no showing that this same protective order was inadequate to safeguard against any such threatened abuse of discovery. Like the court in *Rhinehart v. KIRO, supra,* in which a similar protective order was entered upon the issuance of an order compelling discovery of the same films and videotape at issue here, we find no such a showing in the instant case.

### Priest–Penitent Privilege[2]

RCW 5.60.060(3)[3] sets forth the priest–penitent privilege:

---

[2]The respondents contend that an objection to discovery based upon the priest–penitent privilege is untimely, not having been asserted in the appellants' original responses to the discovery request, in their 1981 arguments to the trial court, or in their prior appeal of the order compelling discovery of, among other things, membership information. Our disposition of the privilege issue makes it unnecessary to address this contention.

A clergyman or priest shall not, without the consent of a person making the confession, be examined as to any confession made to him in his professional character, in the course of discipline enjoined by the church to which he belongs.

■ Although no Washington case has construed this statute, L. Orland and K. Tegland explain this privilege, including its limited scope, as follows:

It provides that a priest or clergyman shall not be examined regarding any confession made to him in his professional capacity within the discipline of the church to which he belongs without the consent of the person making the confession. In statement the statute is narrow, requiring that the confession be made "in the course of discipline enjoined by the church to which he belongs." The proposed, but unadopted, privilege in the Federal Rules of Evidence would have protected a confidential communication to a clergyman in his professional character as spiritual advisor.

(Footnotes omitted.) Orland & Tegland, *The Federal Rules of Evidence: Washington Follows the Federal Model,* 15 Gonz. L. Rev. 277, 327–28 (1980).

In the application of the [priest–penitent privilege] statutes, . . . it has been held, following the dictates of principle, that the privilege applies only to a communication made in the understood pursuance of that church discipline which gives rise to the confessional relation, and, therefore, in particular to confessions of sin only, not to communications of other tenor.

*In re Estate of Soeder,* 7 Ohio App. 2d 271, 302, 220 N.E.2d 547, 568–69 (1966); 8 J. Wigmore, *Evidence* § 2395, at 876–77 (1961). The appellants have not shown that the names and addresses of the Aquarian Foundation members fall within the scope of this privilege.

### Dismissal of Complaint

On December 5, 1986, an order was entered dismissing the complaint of Rhinehart and the Aquarian Foundation

---

[3]In 1987 RCW 5.60.060(3)'s language was altered to be gender neutral. Laws of 1987, ch. 439, § 11, p. 1791.

for failure to comply with the June 26, 1981, order compelling discovery of, among other things, membership information. On January 7, 1987, the trial court entered findings of fact, conclusions of law and an order dismissing the appellants' complaint for violating the December 5, 1986, order compelling discovery of certain films and a videotape.

CR 37(b)(2)(C) provides in part:

If a party or an officer, director, or managing agent of a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party[.]

The remedy for a party's failure to comply with discovery lies within the trial court's discretion. *Rhinehart v. KIRO*, 44 Wn. App. 707, 710, 723 P.2d 22 (1986), *review denied*, 108 Wn.2d 1008, *appeal dismissed sub nom. Rhinehart v. Tribune Pub'g Co.*, 108 S. Ct. 51 (1987). Absent a manifest abuse of discretion, the appellate court will not overturn the trial court's exercise of its broad discretion under CR 37 to impose sanctions for noncompliance with a discovery order. *Rhinehart v. KIRO, supra.*

In *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 228–29, 548 P.2d 558, *review denied*, 87 Wn.2d 1006 (1976), this court stated that

the sanction of a default judgment authorized by CR 37(b)(2)(C) is a harsh remedy, which should only be granted where there has been a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices the opponent's ability to prepare for trial.

But the unexplained failure to furnish complete and meaningful answers to these material interrogatories in the face of the court's order impels a conclusion that the refusal was willful. In this connection we note that CR

37(a)(3) allows the court to treat an evasive or incomplete answer as a "failure to answer." In our opinion, any violation of an explicit court order without reasonable excuse or justification must be deemed a willful act.

We next turn to the contention that the sanction was unjust in that other less drastic alternatives to default would have been sufficient. Cases are legion holding that the choice of sanctions for violation of a discovery order is discretionary and that the particular facts and circumstances of each case will determine whether the discretion has been abused. In this state CR 37 vests broad discretion in the trial court as to choice of sanctions. A discretionary determination should not be disturbed on appeal except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

(Citations omitted.) *See Anderson v. Mohundro,* 24 Wn. App. 569, 573–74, 604 P.2d 181 (1979), *review denied,* 93 Wn.2d 1013 (1980).

The appellants contend that they substantially complied with the discovery order by supplying substantial information, including over 150 articles, while seeking to uphold their rights to privacy, freedom of association and freedom of religious exercise. They further contend that no prejudice to the respondents has been shown in that the videotapes sought concern only collateral issues and the respondents' interests are adequately protected by the appellants' offer to permit the tapes to be viewed in the church. Last, the appellants argue that dismissal was too severe a sanction since the videotapes had only limited relevance to either the claims or possible defenses and the appellants themselves would be unable to use the tapes at trial, thus jeopardizing their ability to sustain their burden of proof.

In June 1980 the respondents served on the appellants interrogatories and requests for production to which the appellants raised objections and filed vague and evasive responses. The respondents moved to compel discovery, and the appellants moved for a protective order. After several hearings on the two motions, the trial judge entered

both an order compelling discovery and a protective order on June 26, 1981. Upon cross petitions for review, our State Supreme Court upheld both orders. The United States Supreme Court denied the appellants' petition for certiorari, 467 U.S. 1230 (1984), but granted the respondents' petition and upheld the protective order, 467 U.S. 20, 37, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984).

On August 20, 1984, the appellants were ordered to comply with the June 26, 1981, order compelling discovery by October 19, 1984. On that date, the appellants provided incomplete and evasive responses.

In December 1984 the respondents requested that the appellants produce certain films and a videotape which they claim are relevant to the appellants' status as public figures, to the truth of the respondents' publications and to the damages which the appellants allegedly suffered. The requested videotape is of the Walla Walla performance, which was the subject of the respondents' publications that the appellants claim are defamatory. The appellants failed timely to object or respond to these requests. At the time, appellate review was pending of legal challenges to the same requests for production in *Rhinehart v. KIRO*, 44 Wn. App. 707, 723 P.2d 22 (1986), *review denied*, 108 Wn.2d 1008, *appeal dismissed sub nom. Rhinehart v. Tribune Pub'g Co.*, 108 S. Ct. 51 (1987). *KIRO* found meritless the appellants' objection to discovery on grounds of freedom of religious exercise and upheld the dismissal of the appellants' action as a discovery sanction under CR 37.

At the October 31, 1986, scheduled hearing on the respondents' motions (1) to dismiss the appellants' complaint for failure to comply with the 1981 order compelling discovery and (2) to compel production of the films and videotape, the appellants were granted a continuance based upon the substitution of counsel and were assessed terms of $250, and the appellants filed an affidavit of prejudice against the trial judge.

At the continued December 5, 1986, hearing, the trial court granted the respondents' motions to dismiss and to

compel production and denied the appellants' motions for a protective order and for clarification of the 1981 discovery order. The appellants did not comply with the December 5, 1986, order compelling discovery and filed a motion for reconsideration of the prior orders, which was subsequently denied. On January 7, 1987, findings and conclusions were entered and the appellants' complaint was dismissed with prejudice a second time based upon their failure to comply with the December 5 discovery order.

The facts here are similar to those in *Anderson v. Mohundro, supra* at 574–75, and *Rhinehart v. KIRO, supra* at 711. The appellants either supplied vague and incomplete answers or failed to respond to the interrogatories and requests for production so that the respondents were required to seek orders compelling discovery. The trial court issued two separate orders requiring compliance with discovery requests, subject to the protective order, and allowed a reasonable time for compliance. The appellants gave incomplete and evasive answers or no response. After hearing the parties' arguments, the trial court found that the appellants had violated the orders compelling discovery and entered orders of dismissal on December 5, 1986, for noncompliance with the June 26, 1981, discovery order and on January 7, 1987, for refusing to obey the December 5, 1986, discovery order.

Although the appellants claim that their failure to comply was neither willful nor deliberate since it was based upon their First Amendment rights, these objections were rejected in *Rhinehart v. Seattle Times Co.,* 98 Wn.2d 226, 654 P.2d 673 (1982), *aff'd,* 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984), and *Rhinehart v. KIRO, supra.* "A violation of the discovery rules is willful if done without a reasonable excuse." *Taylor v. Cessna Aircraft Co.,* 39 Wn. App. 828, 836, 696 P.2d 28, *review denied,* 103 Wn.2d 1040 (1985); *Rhinehart v. KIRO, supra.* The respondents have been prejudiced by the withholding of evidence relevant to the preparation of their defense, and no less drastic sanction would suffice. *See Hampson v. Ramer,* 47 Wn. App.

806, 815, 737 P.2d 298 (1987); *Anderson v. Mohundro, supra* at 575. We will not disturb the trial court's exercise of discretion here. *Rhinehart v. KIRO, supra.*

### ALLEGED TRIAL COURT PREJUDICE

Under RCW 4.12.040 and .050, any party in a superior court proceeding has the right to one change of judge if he files a motion supported by an affidavit of prejudice before the trial court rules on any motion or issue which requires the exercise of discretion. *State v. Hansen,* 107 Wn.2d 331, 333, 728 P.2d 593 (1986); *In re Estate of Shaughnessy,* 104 Wn.2d 89, 92, 702 P.2d 132 (1985).

The appellants contend that the denial of their request for a change of judge was error since no discretionary ruling had been made before the affidavit of prejudice was filed. Discretionary rulings exclude

> the arrangement of the calendar, the setting of an action, motion or proceeding down for hearing or trial, the arraignment of the accused in a criminal action or the fixing of bail[.]

RCW 4.12.050; *Wilson v. Henkle,* 45 Wn. App. 162, 172, 724 P.2d 1069 (1986). Setting or renoting and resetting a cause or motion for hearing is a calendaring action which falls outside the discretionary classification. *State v. Dixon,* 74 Wn.2d 700, 703, 446 P.2d 329 (1968).

Rulings involving the exercise of discretion include the granting of a continuance, *State v. Maxfield,* 46 Wn.2d 822, 829, 285 P.2d 887 (1955); the issuance of process upon an application for a modification of an order, *State ex rel. Mead v. Superior Court,* 108 Wash. 636, 640, 185 P. 628 (1919); and the denial of a request for a jury trial, *State ex rel. Farmer v. Bell,* 101 Wash. 133, 134, 172 P. 221 (1918).

The exercise of discretion is not involved where a certain action or result follows as a matter of right upon a mere request; rather, the court's discretion is invoked only where, in the exercise of that discretion, the court may either grant or deny a party's request. *State ex rel. Mead v. Superior Court, supra.* Here both the August 20, 1984,

order setting October 19, 1984, as the date for complying with the June 26, 1981, discovery order and the October 31, 1986, order permitting the substitution of counsel were discretionary rulings so that the affidavit of prejudice was filed too late.[4]

The rulings in the instant case are distinguishable from the judge's actions which were found not to involve the exercise of discretion in *In re Hiebert,* 28 Wn. App. 905, 910, 627 P.2d 551 (1981). In *Hiebert,* at 909, the judge had reappointed the same guardian ad litem for the child, appointed an attorney for the father, reappointed the attorney for the mother, and set the case for hearing upon a second petition for permanent deprivation of parental rights. *Hiebert,* at 910, notes: "In most cases, only after the appointment of counsel would the law pertaining to affidavits of prejudice be known to the party." In the instant case, prior to the most recent substitution of appellants' counsel, the appellants had other attorneys representing them so that *Hiebert* is inapposite. Setting the case for a hearing in *Hiebert* was a calendaring action excluded from the discretionary classification under RCW 4.12.050. *Wilson v. Henkle, supra.*

 Although prejudice is not deemed to be established since the appellants failed timely to comply with the statutory requirements, *State v. Cockrell,* 102 Wn.2d 561, 565, 689 P.2d 32 (1984), the appellants nonetheless argue that actual prejudice is shown in certain comments of Judge Dore during the proceedings. Since the appellants cite no legal authority in support of their actual prejudice argument, we need not address this issue. *Puget Sound Nat'l Bank v. Honeywell, Inc.,* 40 Wn. App. 313, 317 n.1, 698 P.2d 584 (1985). In any event, the appellants have failed to

---

[4]The letter purportedly reserving the appellants' right to file an affidavit of prejudice against Judge Dore, referred to in the Brief of Appellants, at 4, is not in the record. The citation to the record indicated in the appellants' brief is to a "Declaration of Counsel" in which the appellants' present counsel states, among other things: "This case is preassigned and to my knowledge the assigned judge has not made decisions affecting these substantive matters."

make the requisite "affirmative showing of prejudice which would alter the outcome of the pending litigation" to be entitled to relief on this ground. (Citation omitted). *Williams & Mauseth Ins. Brokers, Inc. v. Chapple,* 11 Wn. App. 623, 629, 524 P.2d 431 (1974).

The judge's comments at the October 31, 1986, December 5, 1986, and January 7, 1987, hearings, which were made in rendering his decisions on motions before him, do not necessarily and inevitably compel the conclusion that the trial court was prejudiced against the appellants. *Williams & Mauseth Ins. Brokers, Inc. v. Chapple, supra.* At the October 31 hearing the judge granted the appellants' motion for a continuance and assessed them $250 in terms. Nevertheless, it cannot be said that the award of terms is evidence of unfair prejudice against the appellants since a continuance was sought on the basis that on the day of the scheduled hearing on the respondents' motions to dismiss and to compel production of the videotape and films, the appellants requested the substitution of counsel and their new counsel requested time to review the record before a hearing on the motions.

At the December 5 hearing the respondents' proposed orders to compel discovery or dismiss and to dismiss were entered, but their request for reimbursement of their incurred expenses was denied. Similarly on January 7, 1987, the respondents' second proposed order of dismissal was entered and the appellants' reconsideration motion was denied, but an assessment of terms against the appellants was denied.

## FRIVOLOUS APPEAL

The respondents seek, on two grounds, an attorney fee award as terms for a frivolous appeal. The first basis, CR 11, which is made applicable to appeals by RAP 18.7, provides in part:

> The signature of a party or of an attorney constitutes a certificate by him that he has read the pleading, motion, or legal memorandum; that to the best of his knowledge,

information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

*See Miller v. Badgley,* 51 Wn. App. 285, 298–99, 753 P.2d 530 (1988). A party or an attorney or both may be assessed litigation expenses, including reasonable attorney fees, for a CR 11 violation. *See Wilson v. Henkle,* 45 Wn. App. 162, 174, 724 P.2d 1069 (1986). Here in entering the second order of dismissal, the trial court concluded that the appellants' objections to complying with the December 5, 1986, order compelling discovery were "frivolous and in bad faith because this issue has already been decided against them in this lawsuit and in another lawsuit."

The respondents' second asserted basis for an attorney fee award, RAP 18.9(a), authorizes this court to impose sanctions against a party who brings an appeal for the purpose of delay where the other party is harmed by the delay. *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 9, 15, 665 P.2d 887 (1983). An appeal is frivolous and brought for the purpose of delay if it presents no debatable issues upon which reasonable minds might differ and is so devoid of merit that there was no reasonable possibility of reversal. *Millers Cas. Ins. Co. v. Briggs, supra.*

Here even if some of the issues presented in this appeal have not been waived, the issues are devoid of merit with no reasonable possibility of reversal since most of the issues are governed by *Rhinehart v. Seattle Times Co., supra,*

and *Rhinehart v. KIRO, supra,* and the other issues are not debatable issues upon which reasonable minds might differ.

We affirm the judgment below and award terms for a frivolous appeal. Under RAP 18.1(e) we remand for the trial court to determine what it deems to be a reasonable amount of the respondents' appellate attorney fees which is to be assessed against the appellants as terms. *See Singleton v. Frost,* 108 Wn.2d 723, 730–34, 742 P.2d 1224 (1987).

WILLIAMS and GROSSE, JJ., concur.

Reconsideration denied August 1, 1988.

Review denied by Supreme Court November 29, 1988.