# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of          )
                                          )    No. 70590-3-I
SOLOMON MEKURIA,                          )
                                          )    DIVISION ONE
                        Appellant,        )
                                          )    UNPUBLISHED OPINION
          and                             )
                                          )
ASTER MENFESU,                            )
                                          )    FILED: March 31, 2014
                        Respondent.       )

GROSSE, J. — In order to obtain a major modification of a parenting plan, a petitioner must demonstrate a substantial change of circumstances. Here, the superior court found that there was no substantial change in circumstances or that modification would be in the best interests of the child, as required under RCW 26.09.260(1). We affirm.

Aster Menfesu and Solomon Mekuria were married on May 5, 2007. Their daughter E.M. was born on April 23, 2008. The parties separated in 2009 when Menfesu filed an order for protection. The dissolution was finalized at trial in August 2010. At the dissolution trial, Menfesu testified to her medical condition and the limitations to her sight. An amended final parenting plan was entered on September 27, 2010. It provided weekly visitation of three days with the father and four days with the mother with exchanges taking place at a police department. When E.M. entered school, primary residence was with the mother, with the father having every other weekend and one day a week.

On March 5, 2013, Mekuria petitioned for major modification of the parenting plan. Mekuria claimed that Menfesu's sight deteriorated so that she was no longer able

to care for E.M. He also submitted several pictures of E.M., showing what he described as injuries. Mekuria sought to change the primary residence of E.M. and limit Menfesu's residential time to supervised visits in Everett, Washington. Menfesu moved to dismiss Mekuria's petition and filed a counter–petition for a minor modification. Adequate cause for that petition was established on May 10, 2013.

Meanwhile, Mekuria filed a motion for finding of adequate cause and entry of a temporary parenting plan giving him immediate primary custody. On April 24, 2013, Commissioner Bonnie Canada-Thurston granted adequate cause for Mekuria's petition, but denied any change in custody and appointed a guardian ad litem. Menfesu filed a motion for revision for the commissioner's finding of adequate cause.

On May 30, 2013, Judge Regina Cahan determined that Menfesu's sight impairment did not constitute a change of circumstances because Menfesu's medical condition was considered during the dissolution trial. Additionally, Judge Cahan found the minor injuries depicted in the five photographs submitted by Mekuria did not amount to anything more than childhood mishaps and were insufficient to warrant a modification of the parenting plan.

Mekuria appeals, arguing the court erred in denying his modification of the parenting plan, considered extraneous evidence not before the commissioner, and that the trial judge was biased. We find no merit to any of Mekuria's arguments.

The court's primary concern in establishing a parenting plan is the best interests of the child.[1] The legislature has recognized that the best interests of a child are normally served "when the existing pattern of interaction between a parent and child is

---

[1] RCW 26.09.002; In re Marriage of Stern, 57 Wn. App. 707, 712, 789 P.2d 807 (1990).

altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm." RCW 26.09.002. Because changes in custody are viewed as "highly disruptive for the children" there is "a strong presumption in favor of custodial continuity and against modification."[2]

To obtain a modification of a parenting plan, the petitioner must submit an affidavit showing adequate cause.[3] RCW 26.09.270 provides:

> A party seeking a temporary custody order or a temporary parenting plan or modification of a custody decree or parenting plan shall submit together with his or her motion, an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his or her affidavit, to other parties to the proceedings, who may file opposing affidavits. The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted.

The trial court will allow a hearing on the motion only if the affidavit establishes adequate cause.[4] "The primary purpose of the threshold adequate cause requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing."[5] Adequate cause requires something more than prima facie allegations that, if proven, would permit a court to modify the parenting plan.[6] At a minimum, adequate cause

---

[2] Stern, 57 Wn. App. at 712.
[3] In re Marriage of Zigler, 154 Wn. App. 803, 809, 226 P.3d 202 (2010).
[4] RCW 26.09.270; In re Custody of T.L., 165 Wn. App. 268, 275, 268 P.3d 963 (2011).
[5] In re Marriage of Adler, 131 Wn. App. 717, 724, 129 P.3d 293 (2006).
[6] Grieco v. Wilson, 144 Wn. App. 865, 875, 184 P.3d 668 (2008), aff'd sub nom. In re Custody of E.A.T.W., 168 Wn.2d 335, 227 P.3d 1284 (2010) (quoting In re Marriage of Mangiola, 46 Wn. App. 574, 577, 732 P.2d 163 (1987)).

means evidence sufficient to support a finding on each fact that the moving party must prove to modify the parenting plan.[7]

Here, the trial court properly determined that adequate cause was lacking. Mekuria's affidavit alleged Menfesu's worsening eyesight as a substantial change in circumstances. But this medical condition was known to the trial court at the time it established the parenting plan. There was no evidence of any worsening of the condition. Thus, there was no change in circumstances. Further, the photographs Mekuria submitted regarding his daughter's alleged "injuries" showed nothing more than common scrapes that a child might acquire while playing. And there was no evidence that these scrapes occurred even while in the mother's care.

Mekuria next argues that the trial court improperly considered the motion for revision of the commissioner's finding of adequate cause. Mekuria argues that Menfesu attached e-mails to and from the guardian ad litem (GAL) that were written after the commissioner had reached her decision. He relies on the court's decision in In re Marriage of Moody, which held that a superior court's review of a court commissioner's ruling "is limited to the evidence and issues presented to the commissioner."[8] But in this instance, the GAL was appointed by the commissioner and the e-mails were nothing more than scheduling issues. Further, had the court not dismissed the commissioner's finding of adequacy, the scheduling of the GAL and her report would have had to be addressed. Moreover, it is clear from the ruling of the trial court that these e-mails were not considered or relied on in its decision.

---

[7] In re Marriage of Lemke, 120 Wn. App. 536, 540, 85 P.3d 966 (2004).
[8] 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999).

Mekuria next argues that the statement of facts recited in Menfesu's motion for revision was new evidence. Those facts included pleadings, memoranda, declarations, and exhibits that were submitted to the commissioner and the court file. There was no new testimony or reference to evidence that was not before the commissioner.

Finally, Mekuria argues that the trial court was biased against him. The law does not presume prejudice on the part of the judicial officer.[9] Mekuria fails to show actual bias, potential bias, or the probability of unfairness. The mere fact that Judge Cahan ruled adversely does not demonstrate prejudice.[10] The fact that Judge Cahan may have volunteered in the past for the Northwest Women's Law Center is not sufficient to establish bias in favor of opposing counsel who works for the Northwest Justice Project.

The Northwest Justice Project requests attorney fees under RCW 26.09.140. A nonprofit, publically funded, legal services corporation that successfully wins an appeal on behalf of an applicant is entitled to attorney fees, notwithstanding the client's obligation to pay a fee.[11] Determining whether a fee award is appropriate under RCW 26.09.140 requires the court to consider the parties' relative ability to pay and the arguable merits of the issues raised on appeal.[12] Having considered the merits of Mekuria's appeal as well as the financial resources available to both parties, we exercise our discretion and grant Menfesu her attorney fees and costs on appeal under RCW 26.09.140, provided that she complies with RAP 18.1(d).

---

[9] In re Borchert, 57 Wn.2d 719, 722, 359 P.2d 789 (1961).
[10] See Rhinehart v. Seattle Times Co., 51 Wn. App. 561, 579-80, 754 P.2d 1243 (1998).
[11] Tofte v. Washington State Dep't of Soc. & Health Servs., 85 Wn.2d 161, 531 P.2d 808 (1975).
[12] Leslie v. Verhey, 90 Wn. App. 796, 807, 954 P.2d 330 (1998).

Affirmed.

WE CONCUR: