[No. 363-41210-2.    Division Two.    March 1, 1971.]

*In the Matter of the Welfare of* CHERYL ANN GIBSON, *a Minor.*

MERNA GIBSON, *Petitioner,* v. THE SUPERIOR COURT FOR PIERCE COUNTY, *Respondent.*

*Carol A. Fuller*, for petitioner.

*Ronald L. Hendry, Prosecuting Attorney*, and *Edward E. Gibson, Deputy*, for respondent.

ARMSTRONG, J.—This petition for a writ of certiorari challenges an order of the Pierce County Juvenile Court depriving petitioner of all parental rights to her daughter and making the daughter available for adoption. Although the dependency and deprivation petitions referred to two children, the juvenile court deprived the mother of parental rights to the younger child only.

The petitioner, Merna Gibson, is the mother of Cheryl Ann Gibson. Her assignments of error raise two major contentions.

(1) The Pierce County Juvenile Court did not have jurisdiction to hear the case because Cheryl Ann was not presently in or a resident of Pierce County.

(2) The court erred in denying an affidavit of prejudice filed at the commencement of the deprivation of custody hearing. This assignment of error is based upon the contention that although the court had continued the dispositional phase of the dependency hearing, the permanent deprivation of custody action requires special notice, injects a new issue and is a separate proceeding.

We do not agree with the first contention, relating to jurisdiction of the juvenile court, but we do agree with the second contention.

We shall first consider the question of jurisdiction. The petitioner, Mrs. Gibson, had been living in Pierce County with her three minor children and was receiving financial aid from the Pierce County Department of Public Assistance. In mid-October, 1968, she planned to move to Longview in Cowlitz County. On October 15, 1968, her plans were interrupted when she was arrested for burglary and

was taken to the King County jail. Cheryl Ann and her sister were taken to the home of Mrs. Gibson's sister, Mrs. Green, who lived in Kent. On October 31, 1968, at the request of Mrs. Green, the children were removed to Remann Hall in Tacoma. Sometime later Mrs. Gibson was released from jail, when the charges were dismissed. On November 4, 1968, a dependency petition was filed for the welfare of the children by a juvenile court probation officer. On November 22, 1968, another dependency petition was filed and on that same day a judge of the Pierce County Juvenile Court placed the children with the mother at the home of Mrs. Green, pending the hearing. The dependency hearing was held on December 6, 1968. After the dependency hearing the mother moved to Auburn in King County.

█ In explaining its ruling on jurisdiction the trial court stated:

RCW 13.04.060 provides as follows: "Any person may file with the clerk of the superior court a petition showing that there is within the county, or residing within the county, a dependent or delinquent child and praying that the superior court deal with such child as provided in this chapter: . . ." It is my opinion that since the youngsters were physically within Pierce County, the Pierce County Juvenile Court did have jurisdiction of the youngsters. It is my opinion that this provision was designed to cover instances in which a youngster may physically be in one county and whose parents may physically reside in another county, and the county in which the child is present does have jurisdiction to entertain a petition to deal with that child. It is obvious from the language of the statute that this is a result that was intended or the Legislature would not have used this explicit language.

We accept and adopt this rationale as a correct statement of law.

The juvenile court was justified in considering that the minors were dependent children "within the county" in view of the facts presented in this case. They had been living in Pierce County and the brief time they spent with their aunt in King County was obviously in the nature of emergency care, which was terminated when the aunt re-

quested that they be placed in Remann Hall because she could not care for them.

Since we accept the rationale of the juvenile court that the children were within the county, and therefore subject to the continuing jurisdiction of the Pierce County Juvenile Court, we need not consider whether the mother was a resident of Pierce County—which she denies.

The second assignment of error relates to the failure of the court to disqualify itself when the affidavit of prejudice was filed at the beginning of the permanent deprivation hearing. To answer this question we must first consider the relevant facts.

On December 6, 1968, the court conducted a hearing on the question of jurisdiction. The case was continued to December 20, 1968, for presentation of testimony on the merits on the question of dependency. The words of the petition are:

> Sue Ellen Dawn and Cheryl Ann Gibson are dependent children in that their mother has failed to provide a proper home for them; and due to the injurious living conditions of the home they are being raised to lead immoral and dissolute lives; WHEREFORE, petitioner prays 'they be made *temporary* wards of the Court for the purpose of whatever placement best suits their needs.

(Italics ours.)

Testimony was taken at the December 20, 1968 fact finding hearing which fully justified a finding that the children were dependent children and should be made wards of the court. At the conclusion of the fact finding hearing, the court entered findings of fact and continued the case to January 10, 1969 for the purpose of considering a proper disposition. At the disposition hearing the court set forth in detail a plan for the future conduct of the family. They were to move back to Pierce County and the mother was required to terminate her relationships with two men who had criminal records. She was given 3 months to prove herself or she was advised that she would lose her children.

After the hearing she took the children to California. She did not comply with the court's plan of conduct to prove her ability to properly rear her children. She and the children were returned to the state of Washington.

On June 13, 1969, a petition for permanent deprivation of parental rights was filed. The case was set for hearing before the same judge on June 27, 1969. At the commencement of the hearing the petitioner filed an affidavit of prejudice against the judge in accordance with RCW 4.12-.040, which provides in part:

> No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause.

The juvenile court refused to recognize the affidavit of prejudice for the stated reason that it had already exercised its discretion in the preceding hearings. The court considered the permanent deprivation hearing as a part of the disposition hearing. If the issue of permanent deprivation of all parental rights had not been injected into the case, the court would have been correct in its ruling because it had continued the disposition hearing to see whether the mother would comply with the plan of conduct it deemed necessary for the welfare of the children. By continuing the disposition hearing the court was authorized to complete its disposition of the case consistent with the dependency and temporary wardship petition before it.

The service and filing of the permanent deprivation of all parental rights petition presented a new issue. In *In re Martin*, 3 Wn. App. 405, 476 P.2d 134 (1970), this court reviewed relevant decisions and held that even though a child has properly been made a ward of the court, there nevertheless remains the legal relationships of parent and child which cannot be terminated by court action without according the parent due process of law. *See In re Messmer*, 52 Wn.2d 510, 326 P.2d 1004 (1958). In *Martin* we defined

the necessary procedural steps required to constitute procedural due process of law in a proceeding to permanently terminate all parental rights. In that case there was no petition clearly advising the parents that they may be deprived of all parental rights. In the case at bar, there is a petition which gave the parents such notice, but it was treated as the second step of a disposition hearing on the question of dependency and temporary wardship. In the interest of brevity we shall not redefine the due process rights clarified in *Martin*.

In fairness to the trial court we point out that *In re Martin, supra* had not been decided at the time the trial court decided the case at bar. We think that the handwriting was on the wall in the cases we discussed in *Martin*, but that case presented a factual pattern that made it necessary to clarify the due process requirements of a deprivation of parental rights hearing.

Having determined that the petition for deprivation of parental rights presented a new issue, we are next confronted with the question of whether the court should have recognized the affidavit of prejudice and referred the case to another judge.

It has been established that an affidavit of prejudice may be filed against a judge in a juvenile court proceeding. Where such an affidavit has been timely filed, the moving party is entitled to a change of judge as a matter of right. *In re McDaniel*, 64 Wn.2d 273, 391 P.2d 191 (1964). An affidavit of prejudice is timely if it is made before the judge has made any ruling in the proceeding. RCW 4.12.050.

Our prior case authority, however, does not answer the respondent's contention that the juvenile court has continuing jurisdiction and the court in this case had been hearing discretionary matters relating to the welfare of the children. Although it is clear that an affidavit of prejudice may be filed in the juvenile court we are now concerned with whether it was timely filed in this instance. In this respect we find no case directly in point.

■ While we recognize that the juvenile court is *sui generis*, appellate courts have in numerous decisions looked to other fields of the law as persuasive authority, in determining what is due process and fair treatment of parents and their children. Because of the delicate balance between the desirable social aspects of the juvenile court and the traditional legal principles of due process of law the courts have carefully weighed the advantages of the concepts of informality inherent in the doctrine of parens patriae and the formality that frequently accompanies due process, as we know it in the other fields of the law. Inherent in every consideration is the necessity to avoid injustice and protect the basic rights of parents and children. The welfare of the children is the paramount consideration.

With this consideration we turn to the most related field of the law in determining whether the continuing jurisdiction of the juvenile court is contrary to the normal application of the rule requiring a judge to step aside if an affidavit of prejudice has been filed. We feel the closest analogy is to a modification of a divorce decree relating to custody of children. In *State ex rel. Foster v. Superior Court*, 95 Wash. 647, 164 P. 198 (1917), the court held that in a suit for modification in the custody of a child the petitioner was entitled to a change of judge, on the filing of an affidavit of prejudice. In *Foster* at page 651 the court first quoted from *Bedolfe v. Bedolfe*, 71 Wash. 60, 61, 127 P. 594 (1917):

> "It is next argued that an application for the modification of a decree in a divorce action is a continuation of the original case, and hence that the statute does not apply. We think the premise is sound, but that the conclusion does not follow. The statute in positive terms provides that no judge of a superior court 'shall sit to hear or try any action or proceeding' when his prejudice shall have been established in the manner therein provided. . . . This is a proceeding in the original action. The original decree was entered on the 8th day of May, 1911. The petition in this proceeding was filed in February, 1912. After the original case had gone to final judgment, the statute became applicable to any subsequent proceeding in the original case."

Thereafter the court in *Foster* stated at page 653:

[S]ince this is not a proceeding ancillary to the divorce action or in aid of the enforcement of the final decree rendered therein, but is a proceeding to try and determine new rights arising out of new facts occurring since the rendering of that decree, it is a "proceeding" within the meaning of Rem. Code, § 209-1, and that relator, having made his application for change of judge as prescribed by the statute, is entitled to such change as a matter of right.

*See also State ex rel. Mauerman v. Superior Court,* 44 Wn.2d 828, 271 P.2d 435 (1954).

■ We conclude that a hearing to determine deprivation of parental rights and placing a child for adoption is not only a new proceeding to determine new rights, but it is a proceeding which involves rights more precious to many people than the right of life itself. Many times the greatest service a juvenile court judge can render is to give an abused child the right to a new life, but in any event it is a proceeding of such gravity and magnitude that it should be protected by the right to exercise an affidavit of prejudice.

We need not answer petitioner's last contention that hearsay evidence was admitted in the deprivation of parental custody hearing because we have granted a new hearing on the last contention of error discussed. *In re Martin, supra* reviews relevant cases and sets forth the evidentiary guidelines.

Reversed and remanded for a new hearing consistent with this opinion.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied April 1, 1971.

Review denied by Supreme Court May 6, 1971.