[No. 4341-0-III.   Division Three.   April 14, 1981.]

*In the Matter of* DENISE HIEBERT.

---

*Donald Hackney*, for appellant.

*James P. McNally, Prosecuting Attorney*, for respondent.

*Virginia Pickett*, guardian ad litem.

Roe, J.—Some 5 months after Denise Hiebert was born, she was found to be a dependent child in Pend Oreille County. On June 8, 1978, when she was 14 months old, a petition permanently to deprive the parents of custody was filed. A final disposition on the merits of this petition was never made, but continued supervision by the Department of Social and Health Services was agreed to by the parties and approved by the court. On November 25, 1980, a new petition for permanent deprivation of parental rights was filed. Ten days later, as to this permanent deprivation action, petitioners filed an affidavit of prejudice against the judge who had heard and made the orders finding the dependency of Denise and placing her under care. The judge denied the affidavit of prejudice and thus refused to disqualify himself. It is from this denial the petitioner seeks review.

Under RCW 4.12.040, .050, "No judge . . . shall sit to hear or try any action or *proceeding* when it shall be established . . . said judge is prejudiced . . ." (Italics ours.) An affidavit of prejudice filed pursuant to statute conclusively

establishes such prejudice. *In re McDaniel,* 64 Wn.2d 273, 391 P.2d 191 (1964), established that an affidavit of prejudice may be filed against a judge in a juvenile court proceeding.

The issue is whether the juvenile court erred in denying an affidavit of prejudice in a proceeding for permanent deprivation of parental rights when the judge against whom the affidavit was filed had presided over all prior dependency hearings.

In *Bedolfe v. Bedolfe,* 71 Wash. 60, 127 P. 594 (1912), after a decree of divorce had been entered, a modification was sought. An affidavit of prejudice was filed against the judge who had heard the original divorce action. It was argued that the application for a modification of the decree was a continuation of the original case and hence the statute pertaining to affidavits of prejudice did not apply. The Supreme Court agreed that the modification of a decree in a divorce action is a continuation of the original case, but disagreed that the statute did not apply, holding that the statute in positive terms provides that no judge of a superior court shall sit or hear or try any action or proceeding when his prejudice has been established. This is a purely statutory right, and a modification is a new proceeding in the original action. After the original case has gone to final judgment, the statute becomes applicable to any subsequent proceeding in the original case. Hence, it held the affidavit of prejudice and the transferring to another judge was proper.

This rationale was approved in *State ex rel. Foster v. Superior Court,* 95 Wash. 647, 164 P. 198 (1917). Again, there had been a divorce decree entered and a subsequent petition to modify the decree accompanied by an affidavit of prejudice against the judge who had heard the divorce case. The Supreme Court held that a modification of a divorce decree, as to the custody of children, is a proceeding within the meaning of the statute. In a divorce decree the court has continuing jurisdiction. However, the affiant's right for a change of judge had not been abandoned by the

failure to ask for such change at the beginning of the divorce action. The court held that the word "proceedings" as used in the statute does not mean only such a proceeding as entirely apart from some other action, but it includes a proceeding in a divorce action after the rendering of the final decree. This includes a determination of child custody upon new and different facts arising after the rendering of the original decree. A modification may call for the trial of issues which are not and could not be tried in a divorce action or disposed of by the final decree rendered therein. This is true even though a formal summons, as in the commencement of a civil action, is not required.

We recognize that a dependency action may or may not go to a final judgment and that some of the facts justifying dependency would also be considered in permanent deprivation. A dependency action has different objectives, *i.e.,* the best interest of the child without the deprivation of all parental rights. Permanent deprivation requires a new notice and action and is directed against the parents. In *In re Martin,* 3 Wn. App. 405, 476 P.2d 134 (1970), the parents had defaulted in an action to declare a child dependent. Nevertheless, they were entitled to a new notice in a petition for permanent deprivation. Failure to accord them such notice was a violation of due process because such proceedings could result in the deprivation of all parental rights, which was not at issue in the dependency hearing.

The appellants allege that the precise question confronting this court was decided in their favor in the case of *In re Gibson,* 4 Wn. App. 372, 483 P.2d 131, *review denied,* 79 Wn.2d 1003 (1971). In that case the Gibson children were made temporary wards of the court. The following year, a petition for permanent deprivation of parental rights was filed. The case was set for hearing before the same judge who heard the dependency petition and an affidavit of prejudice was filed. The juvenile court judge refused to recognize the affidavit for the reason he had already exercised his discretion in the dependency hearing, and he considered the permanent deprivation as a part of the disposition

hearing. The appeals court held that the affidavit should have been recognized, stating at page 376: "The service and filing of the permanent deprivation of all parental rights petition presented a new issue", citing *In re Martin, supra.* The *Gibson* court then relied on related fields of law, citing *State ex rel. Foster v. Superior Court, supra,* and *Bedolfe v. Bedolfe, supra,* and held that a deprivation is a proceeding of such gravity and magnitude that it should be protected by the right to exercise an affidavit of prejudice.

It has been suggested by the juvenile court judge here that the *Gibson* case is authority, if at all, under the former juvenile law and that under the 1977 juvenile court act, a different result would be obtained.

*In re Frederiksen,* 25 Wn. App. 726, 739, 610 P.2d 371 (1979), in discussing previous and present juvenile court laws, concluded

> that the legislative intent was not to repeal any portion of existing law relating to juveniles and juvenile court, but instead to continue, amend and supplement it.

This was approved in *In re Aschauer,* 93 Wn.2d 689, 611 P.2d 1245 (1980), which involved an action permanently to deprive the parents of the custody of their children. The Supreme Court, in adopting the rationale of *In re Frederiksen, supra,* held the new law, which is described internally as an amendatory act, should be read as a continuation of the old law with amendments and supplements.

We conclude the original order for permanent deprivation was abandoned; hence, we need not consider what action the juvenile court judge took pursuant to that original petition. A subsequent and new petition (not an amended petition) was filed. Ten days after this petition, an affidavit of prejudice was filed. The judge of Pend Oreille County took no action on the new petition except to reappoint the same guardian ad litem for the child, appoint an attorney for the father, reappoint the attorney for the mother, and set the case for hearing.

An affidavit is not timely unless it has been made

before the judge presiding has made any order or ruling involving discretion. By statute (RCW 4.12.050), the arrangement of the calendar, the setting of an action, motion or proceeding down for hearing or trial, the arraignment of the accused in a criminal action or the fixing of bail, shall not be construed as a ruling or order involving discretion. We do not believe the reappointment of the same guardian ad litem or an attorney for the father and mother, which would be required, involves an act of discretion as contemplated by the statute. In most cases, only after the appointment of counsel would the law pertaining to affidavits of prejudice be known to the party. Certainly, in a criminal case, an appointed attorney could file an affidavit of prejudice following the appointment.

We are sympathetic with the trial judge who urges that *In re Gibson, supra,* if it was the law of the state, was removed by the new codification. The trial judge in this case obviously had in mind the possible permanent deprivation when dependency was determined. As he expressed it, this child who has been deprived of security, love and a proper home must suffer further delay until an outside judge can be secured. There will be additional cost because more testimony will have to be produced, thus depriving the court of the memory judge who sat through the many previous hearings, and those who worked with the child who will have to be located or the testimony lost. All of these facts may be true. The same may be said of a petition to modify a decree in a divorce action which could take place a number of years after the original divorce. It may also take place in a criminal action where a judge may have heard one case involving a codefendant in separate trials. We do not seek to extend this statutory right for a change of judge which did not exist at common law nor does it exist in the federal court system. Nevertheless, we are bound by our statute and the principles of the Washington cases.

We hold that an affidavit of prejudice may be filed against the judge who heard the dependency matter involv-

ing the same child. We also hold that the routine appointments and setting the case for trial did not involve discretion and that the affidavit was timely. The judgment of the trial court is reversed and the case is remanded to the Superior Court for Pend Oreille County for proceedings consistent with this opinion.

McINTURFF, C.J., and GREEN, J., concur.