IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of W.S.L., DOB: 1/26/2018, | No. 80010-8-I |
| | DIVISION ONE |
| STATE OF WASHINGTON, DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES, | UNPUBLISHED OPINION |
| Respondent, | |
| v. | |
| JAYNA PALMER, | |
| Appellant. | FILED: March 2, 2020 |

CHUN, J. — Jayna Palmer appeared and participated in a dependency action involving her son and yet failed to appear in a subsequent termination proceeding. The trial court found her to be in default and then, following a brief hearing on the termination petition, entered an order terminating her parental rights. The mother contends on appeal that her appearance in the dependency triggered the application of CR 55 and its requirement of prior written notice of a motion for default. She also challenges the sufficiency of the evidence supporting the court's findings with respect to the required statutory elements under RCW 13.34.180. We affirm.

BACKGROUND

Jayna Palmer is the mother of W.L.S., born in January 2018. When W.L.S. was five months old, the Department of Children, Youth and Families removed him from his parents' custody due to concerns related to their mental health, substance abuse, and the lack of safe and stable housing. W.L.S. has not lived with either parent since that time. On August 7, 2018, the dependency court found that W.L.S. was dependent as to both parents under RCW 13.34.030(6)(c).

Seven months later, on March 13, 2019, the Department filed a petition to terminate the parental rights of both parents.[1]

On March 19, 2019, Karen Nissly, the social worker assigned to the case personally served the mother with the petition as well as a notice and summons. The summons directed the mother to appear for a hearing on May 6, 2019. The notice explained that the purpose of the hearing was to "consider evidence relating to the petition" and that it was important to "be present at this hearing." The notice expressly informed the mother that, if she failed to appear, the court could enter an order in her absence permanently terminating her parental rights. The notice further advised the mother of her rights, including the right to an attorney:

> You have the right to be represented by a lawyer. If you cannot afford a lawyer, you have the right to request that the court appoint a lawyer to represent you at public expense. If you qualify, a lawyer will be appointed by the court to represent you. If you are already

---

[1] The superior court assigned Snohomish County Cause No. 18-7-01183-31 to the dependency action and Cause No. 19-7-00397-31 to the termination proceeding.

<u>**represented by a court-appointed lawyer in the dependency action, that lawyer will not represent you in this matter unless you request new appointment of a lawyer**</u>.

(Emphasis in original.) The notice included instructions as to how to request the appointment of counsel and contact information for the Department.

The mother did not file an answer to the petition, file a notice of appearance, or request appointment of new counsel. She did not appear at the May 6 hearing. Noting that the mother had been served with the petition and summons and failed to appear, the Department asked the court to find her in default.

The court granted the Department's motion and then held a brief hearing on the termination petition.[2] The Department presented only the social worker's testimony. The court entered an order terminating the mother's parental rights.[3] The mother appealed that order.

Almost two months after entry of the termination order, on June 18, 2019, the mother filed a notice of appearance in the termination matter.

## ANALYSIS

The mother claims that the termination order is "void" because the Department failed to notify her of its motion for default in accordance with CR 55. A party may make a motion for default when the opposing party "has failed to appear, plead, or otherwise defend as provided by these rules." CR 55(a)(1).

---

[2] The attorney who represented the mother in the dependency matter was present, but confirmed that he did not represent the mother in the termination action and did not take a position on the Department's motion.

[3] The father relinquished his parental rights two days later and is not a party to this appeal.

3

CR 55(a)(3) requires service of written notice of a default motion at least five days before a hearing on the motion upon any party "who has appeared in the action for any purpose." "A defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance." RCW 4.28.210. Whether the mother appeared for purposes of CR 55 is a question of law that we review de novo. In re Welfare of S.I., 184 Wn. App. 531, 540-41, 337 P.3d 1114 (2014), review denied, 183 Wn.2d 1002 (2015)

The mother contends that CR 55 applied because she appeared in the dependency proceeding that preceded termination. But Division Three of this court rejected this precise argument. S.I., 184 Wn. App. at 540-41. The facts of S.I. are analogous to those here. The mother appeared in the dependency action and sporadically participated in some of the services the Department offered. S.I., 184 Wn. App. at 535-36. The assigned social worker personally served the mother with a termination petition and summons to appear at a scheduled hearing on the petition. S.I., 184 Wn. App. at 536. The mother did not file a notice of appearance in the termination matter or appear at the hearing. The Department moved for default, and the court granted the motion on the same day. S.I., 184 Wn. App. at 536-37. The court held that the notice requirement of CR 55 did not apply because the mother's appearance in the dependency matter did not constitute an appearance in the termination proceeding. S.I., 184 Wn. App. at 541. The court reasoned:

> [A]n action to permanently terminate parental rights is a new proceeding and not an extension of the dependency action. In re Hiebert, 28 Wn. App. 905, 908-09, 627 P.2d 551 (1981). This is because the purpose of a dependency proceeding and a termination proceeding are diametric: A dependency proceeding seeks to provide services to a parent to correct parental deficiencies so as to reunify the parent-child relationship, whereas a termination proceeding seeks to permanently terminate the parent-child relationship.

S.I., 184 Wn. App. at 540.

The mother correctly points out that this court is not bound by the decisions of another division. See In re Pers. Restraint of Arnold, 190 Wn. 2d 136, 153-54, 410 P.3d 1133 (2018) (one division of the Court of Appeals should give respectful consideration to the decisions of other divisions but is not bound by the decision of another division). She asserts that the decision in S.I. conflicts with the Washington State Supreme Court's decision in In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011). She contends that the court in K.N.J. concluded that dependency and termination are a part of a unified process such that a party's appearance in a dependency constitutes an appearance in a termination action involving the same child.

K.N.J. addressed whether an order of dependency was void because a judge pro tempore entered the order without the consent of all parties. K.N.J., 171 Wn.2d at 578. Concluding that the order was void, our Supreme Court went on to consider whether there was sufficient evidence of dependency to support the subsequent order of termination. K.N.J., 171 Wn.2d at 578. The court affirmed the order of termination because the trial court made factual findings that established dependency. K.N.J., 171 Wn.2d at 582.

5

In discussing the statutory framework under RCW 13.34, the court described termination of parental rights as a "three-step process" which begins, in some cases, with shelter care and must include a hearing to determine dependency. K.N.J., 171 Wn.2d. at 576. The mother interprets this language too broadly. In the context of its discussion, the court merely recognized that a finding of a dependency precedes termination and that dependency is an element the Department must prove in order to terminate parental rights. The decision neither holds nor implies that dependency proceedings and termination proceedings are the same legal action, as the mother suggests.

S.I. is consistent with K.N.J. and with prior case law recognizing that dependency and termination proceedings are legally distinct and have "different objectives, statutory requirements, and safeguards." In re Welfare of K.K., 119 Wn.2d 600, 609, 836 P.2d 200 (1992) (a finding of dependency, that does not require a finding of parental unfitness, does not violate due process). For example in Hiebert, the filing of a new termination action allowed the parents to file of an affidavit of prejudice, notwithstanding that the same judge presided over the dependency proceedings involving the same child. 28 Wn. App. at 909-10; see also In re Gibson, 4 Wn. App. 372, 379, 483 P.2d 131 (1971) (accord). "Permanent deprivation requires a new notice and action and is directed against the parents." Hiebert, 28 Wn. App. at 908.

The decision in S.I. is persuasive and applies here. An action to permanently terminate parental rights is a new and distinct proceeding, not an

extension of the dependency action. <u>S.I.</u>, 184 Wn. App. at 540. And here, the notice and summons explicitly informed the mother of the critical nature of the proceeding initiated by the Department's petition, the importance of attending the hearing, the potential consequences of not attending, and the need to request the appointment of a new lawyer for the termination action, even if she was already represented by a lawyer in the dependency. The fact that a termination proceeding initiates a new proceeding does not cause it to be a "trap[] for the unwary."

While default judgments are generally disfavored, there are competing needs for efficiency and a process that encourages compliance with a summons and complaint. <u>See</u> <u>Morin v. Burris</u>, 160 Wn.2d 745, 759, 161 P.3d 956 (2007). The concern for timely permanency for children is particularly paramount in cases under the termination statute. <u>See</u> RCW 13.34.020. "[A] child's right to a stable home cannot be put on hold interminably because a parent is absent from the courtroom and has failed to contact [their] attorney." <u>In re Dependency of C.R.B.</u>, 62 Wn. App. 608, 616, 814 P.2d 1197 (1991). The mother's appearance in the predicate dependency action did not entitle her to notice under CR 55 of the motion for default in the termination proceeding.

The mother next challenges the sufficiency of the evidence to support the termination order. Where, as here, a parent fails to respond to a notice and summons of a proceeding to terminate parental rights, the State may still obtain a judgment "permanently terminating that parent's right to the custody and care of

[their] child." C.R.B., 62 Wn. App. at 616. In order to comply with due process, before entering a default termination order, a court must hold a hearing on the merits of the petition in accordance with the statutory requirements required for termination.[4] See RCW 13.34.180(1); S.I. 184 Wn. App. at 542. That process must generally include the sworn testimony of a person familiar with the case and allow the court an opportunity to question such person. S.I., 184 Wn. App. at 542.

An appellate court will not disturb the trial court's findings concerning the elements of a parental rights termination case if substantial evidence supports them. In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). When the Department must prove its case by clear, cogent, and convincing evidence, the evidence must be more substantial than that required under a preponderance standard. C.R.B., 62 Wn. App. at 618. Required findings must be sufficiently specific to permit meaningful review. In re LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). Although the degree of particularity required depends on the circumstances of each case, at minimum the findings should indicate the factual bases for the ultimate conclusions. C.R.B., 62 Wn. App. at 618.

---

[4] In order to terminate parental rights, the Department must first prove the six elements outlined in RCW 13.34.180(1) by clear and convincing evidence. RCW 13.34.190(1)(a)(i); In re Dependency of T.L.G., 126 Wn. App. 181, 197, 108 P.3d 156 (2005). Second, a preponderance of the evidence must establish that termination is in the child's best interests. RCW 13.34.190(1)(b); In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). In addition to these two statutory requirements, due process also requires the court to make a finding of current parental unfitness. In re Parental Rights to K.M.M., 186 Wn.2d 466, 479, 379 P.3d 75 (2016).

The mother argues that the facts here are comparable to those in C.R.B. In that case, after finding the mother to be in default, the court terminated her parental rights based on the testimony of her caseworker. C.R.B., 62 Wn. App. at 612-13. Apart from stating the date she began to work on the case, the caseworker testified to none of the facts underlying the dependency and termination proceedings. C.R.B., 62 Wn. App. 612. She answered seven questions affirmatively in response to the Department's attorney's questions that mirrored the language of the statutory elements for termination under RCW 13.34.180. C.R.B., 62 Wn. App. at 612. This court reversed the order terminating the mother's parental rights, in part, because the "'evidence'" consisted of only legal conclusions. C.R.B., 62 Wn. App. at 618. And since the trial court's findings of fact merely repeated the caseworker's testimony, there was no factual support for the legal conclusions and they were not sufficiently specific to permit appellate review. C.R.B., 62 Wn. App. 619.

Although the hearing on the petition here was brief, the Department presented evidence that differs in significant respects from the evidence in C.R.B. First, Nissly, who signed the petition to terminate the mother's rights on behalf of the Department, testified that she was familiar with the facts alleged in the termination petition. She confirmed that those facts were "true and correct" to the best of her knowledge. Nissly's unrefuted testimony therefore incorporated all of the facts supporting the required statutory elements stated in the

9

termination petition. The termination order also includes those facts. The court's order thus provides the factual basis to support its legal conclusions.

And second, unlike the caseworker's testimony in C.R.B., Nissly testified about many of underlying facts, and did not merely recite legal conclusions "parroting" the statutory language. C.R.B., 62 Wn. App. at 618. Nissly testified about the services the Department offered to the mother, about the mother's lack of progress in those services, and about the issues that rendered her currently unfit to parent. Nissly stated that the Department offered the mother "[m]ental health services, a mental health assessment and counselling, a drug and alcohol assessment, random UAs,[5] housing assistance, [and] casework management" to address her identified deficiencies of unaddressed mental health issues, substance abuse issues, and lack of safe and stable housing.[6] She also testified that the Department provided substance abuse treatment to the mother.

Nissly further testified that the mother had not seen W.L.S. in approximately three months. She said that the mother initially participated in an outpatient drug treatment program, but continued to use drugs. The treatment provider therefore recommended a more intensive level of treatment. The Department such treatment available and the mother enrolled in an inpatient treatment program, but left after only four days. Nissly testified that the mother

---

[5] Urinalysis testing.

[6] The Department additionally offered the mother drug and alcohol treatment and the opportunity to participate in medical and developmental appointments for her child.

stopped attending mental health counselling in October 2018, about six months before the hearing on the termination petition.

Evidence in the record establishes that the mother's substance abuse and mental health issues were "significant" and required "long-term treatment." The mother tested positive for drugs in September and October of 2018, and failed to appear for several other UAs Nissly scheduled for her. The mother had not engaged in drug treatment after leaving the impatient program, approximately five months before the termination hearing. She had not obtained stable and safe housing, participated in her son's medical and developmental appointments, or regularly visited him. She lacked understanding and was incapable of providing for the child's physical, emotional, mental, and developmental needs.

The mother specifically challenges the evidence to support the court's finding that the Department offered all necessary and reasonably available services capable of correcting her parental deficiencies, as required by RCW 13.34.180(1)(d).[7] She claims the record fails to show that the Department offered services that were appropriately tailored to meet her individual needs. But the mother does not explain how any of the services could have been more helpful or identify her specific needs that the services failed to address. The Department offered, and the mother completed, both mental health and drug and alcohol assessments. The Department offered services to the mother based on those professional, individualized assessments. And the Department adjusted

---

[7] RCW 13.34.180(1)(d) requires proof that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided."

the services it offered the mother after the treatment provider determined that the mother needed intensive treatment. The evidence demonstrates that the Department offered services that were tailored to meet the mother's needs.

The mother also contends the Department failed to offer services in a meaningful way. She points out that Nissly did not testify that she gave the mother a "referral list" to access services. But providing a list of service providers is merely one way the Department may offer services. See In re Hall, 99 Wn.2d 842, 850, 664 P.2d 1245 (1983). The evidence here demonstrated that the Department offered the mother services in a way that enabled her to access them because she participated, to a limited degree, in assessments, treatment, UAs, and counselling. The evidence in the record supports the court's finding that the Department expressly offered specific services to the mother capable of addressing her parental deficiencies.

Finally, the mother claims the Department failed to demonstrate a connection between her parental deficiencies and harm to the child, and therefore, failed to establish current parental unfitness. See In re K.R., 128 Wn.2d 129, 142, 904 P.2d 1132 (1995) (in addition to finding the statutory elements, due process requires that a court make a finding of current parental unfitness before parental rights can be terminated). Contrary to the mother's claim, the evidence in the record is sufficient to justify linking her deficiencies and current unfitness to parent. According to the facts in the record, the mother's behavior indicates a failure to prioritize parenting. She was not regularly visiting

her child and had not seen him at all for three months. She stopped participating in the services necessary to address her significant mental health and substance abuse issues. She had not availed herself of the opportunity to attend her son's medical and development appointments. And although the social worker personally provided notice, she failed to respond to the termination action or appear at the hearing.

The Department presented unrebutted evidence sufficient to meet its burden to prove the required statutory factors by clear, cogent and convincing evidence. The evidence was also sufficient to provide a factual basis that supports the court's legal conclusions.

Affirmed.

_Chun, J._

WE CONCUR:

_Smith, J._                    _Mann, ACJ_