# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 82276-4-I (consolidated with |
| | ) | No. 82277-2-I) |
| S.N.W. and H.W., | ) | |
| | ) | DIVISION ONE |
| Minor Children. | ) | |
| | ) | UNPUBLISHED OPINION |

MANN, C.J. — J.W. appeals the termination of his parental rights to S.N.W. and H.W.[1] J.W. argues that the State did not meet its burden under RCW 13.34.180(1)(d) because the Department of Children, Youth, and Families (Department) refused to fund court-ordered domestic violence (DV) treatment and failed to inform the court of this decision. J.W. also alleges that he was denied his right to effective assistance of counsel when he was not provided continuous and contemporaneous consult with counsel in Zoom[2] proceedings, when counsel failed to bring a motion to compel the Department to pay for DV treatment, and when counsel could not assist him in maintaining a reasonable courtroom demeanor. We affirm.

---

[1] The termination proceeding involved both J.W. and the children's mother. The mother entered a relinquishment and signed an open adoption agreement. Termination of the mother's parental rights is not before us.

[2] Zoom is a video teleconferencing platform.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

S.N.W. and H.W. were removed from the care of their parents in 2016. At the time of removal, S.N.W. and H.W. were four and five respectively. On November 3, 2017, J.W. agreed to entry of a dependency and dispositional order. J.W. was in custody on multiple charges when the dependency order was entered. Under the dependency order, J.W. agreed to complete the Triple P parenting program, a psychological evaluation with a parenting component and any recommended treatment, random urinalysis testing, drug/alcohol evaluation and recommended treatments, and a DV batterer's assessment and recommended treatment. Colleen Stark-Bell was J.W.'s social worker from the time the dependency was established through the termination trial.

The Department referred J.W. to Washington National Counseling for Triple P and assigned therapist Noel Villarivera. At first, J.W. attended over half of the Triple P sessions, but began to routinely miss sessions with Villarivera. Because of J.W.'s noncompliance, the referral was returned to the Department in June 2018. The Department encouraged J.W. to reenter Triple P, but he was mostly out of communication until late October 2018. In November 2018, J.W. reentered Triple P but Villarivera closed the referral again, due to lack of participation. The Department referred J.W. to Dr. Benjamin Johnson for psychological evaluation. J.W. cancelled his first appointment in February 2018 and failed to cooperate and reschedule the appointment until October 2018. On December 14, 2018, Dr. Johnson completed the evaluation and diagnosed J.W. with adjustment disorder with mixed anxiety and depression, alcohol use disorder, severe, in remission, amphetamine use in early

remission, and unspecified personality disorder. Dr. Johnson recommended that J.W. establish a therapeutic relationship with a mental health professional for 180 days, enter substance use treatment and support, and participate in parent coaching for a period of 90 days.

J.W. was referred to Valley Cities for mental health treatment but he never went beyond the initial mental health intake. Stark-Bell also suggested Harborview for mental health counseling, but J.W. never engaged in that service. J.W. failed to provide the Department with records of any mental health treatment.

J.W. participated in Valley Cities' intensive outpatient substance abuse treatment. But he was sporadic in attendance, difficult to reach when not present, and used marijuana throughout the treatment. Treatment specialist Seairra Wheatley testified that J.W. constantly needed reassessment because he would leave the program for longer than 30 days at a time. J.W. also had to restart the treatment program after reporting several relapses in substance use. Eventually Valley Cities discharged J.W. from the program for lack of attendance and violating rules.

The court-ordered random urinalysis (UAs) at a frequency of one time a week for 90 days. The Department tried to work with J.W. and provided him with repeated referrals for UAs at locations convenient to J.W., but he never completed them. J.W. never successfully completed the UA requirement with any provider.

J.W. was ordered to complete a DV evaluation and follow any treatment recommendations. In January 2018, the Department referred J.W. to La Esperanza for DV assessment. After a period of little contact from J.W., the social worker finally received a report from La Esperanza in January 2019. La Esperanza recommended

that J.W. complete a 12-month treatment protocol based on his criminal history and the protection orders against him. J.W. did not engage in DV treatment services. J.W. testified that he took a "Thinking for Change" class through the Department of Corrections and was under the impression that his "DV was taken care of." J.W. also claimed that he needed another referral for services for DV treatment, but his social worker explained that he did not need another referral.

The dependency order provided for J.W. to have two supervised visitations per week with the children after his discharge from corrections. From July to October 2018, J.W. did not visit his children or engage in any services. He again stopped visitation, communication, and engaging in services in March 2019 and did not respond for the next nine months. J.W. engaged in in-person visits in January 2020, then stopped until May 2020, where he was provided several video visits because of COVID-19. On June 1, 2020, J.W. became angry that his children attended a Black Lives Matter Protest but could only attend video visitations. J.W. did not attend his next three visits and the visitation contract was canceled. J.W. did not respond to any further scheduling attempts or to direct contact with his children through calls to the foster parents.

The Department petitioned for termination of J.W.'s parental rights as to S.N.W. and H.W. on June 12, 2019. After COVID-19 related delays, the trial began in October 2020. J.W. requested a continuance of the trial on September 29, 2020, based on the attorney's contention that he could not represent J.W. properly in a hybrid-remote setting. After considering and weighing the Mathews[3] factors, the trial court determined a hybrid-remote trial provided sufficient safeguards to protect J.W. from the risk of

---

[3] Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

erroneous deprivation of his right to counsel and denied the motion. The trial was conducted over Zoom and lasted 19 days. The judge was in the courtroom, which was open to the public, and J.W. mostly appeared in person. J.W. was provided a laptop to participate via Zoom, and could communicate with his attorney via text, e-mail, or in a private breakout room within Zoom.

The trial court terminated J.W.'s parental rights on December 8, 2020, finding that J.W. had not completed any of his court-ordered services, and had not progressed in his ability to be a safe and stable parent to H.W. and S.N.W. The court was particularly influenced by J.W.'s lack of effort over time, finding he routinely failed to improve his parental deficiencies in the 36 months following the entry of the dispositional order. The court found that J.W. had shown no ability to fully engage in and complete services, or even contact his children.

J.W. appeals.

## ANALYSIS

A. State's Burden under RCW 13.34.180(1)(d)

J.W. argues that the State did not meet its burden under RCW 13.34.180(1)(d) because it failed to provide J.W. with court-ordered DV treatment. We disagree.

Parental rights are a fundamental liberty interest protected by the state and federal constitutions. U.S. CONST. amends. V, XIV; WASH. CONST. art. I, § 3. The State may interfere with a parent's constitutional right "only if [it] can show that it has a compelling interest and such interference is narrowly drawn to meet only the compelling state interest involved." In re Custody of Smith, 137 Wn.2d 1, 15, 969 P.2d 21 (1998). To terminate a parent's rights, the State must prove the statutory elements found in

RCW 13.34.180(1) by clear, cogent, and convincing evidence. In re Dependency of M-A.F.-S., 4 Wn. App. 2d 425, 449, 421 P.3d 482 (2018). Evidence is clear, cogent, and convincing "when the ultimate fact in issue is shown by the evidence to be 'highly probable.'" In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995). A trial court's findings of fact will not be disturbed on appeal if they are supported by substantial evidence. In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). Thus, the ultimate fact in issue must be shown by evidence to be highly probable. Sego, 82 Wn.2d at 739.

RCW 13.34.180(1)(d) requires:

That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided.

To meet its statutory duties in offering and providing services, at a minimum, the Department must give the parent a referral list of agencies or organizations that provide the service. In re Welfare of Hall, 99 Wn.2d 842, 850, 664 P.2d 1245 (1983). Furthermore, the Department is tasked with coordinating with contracted service providers and supervising agencies to ensure parents in dependency may quickly access remedial services. RCW 13.34.025(2). The Department has a duty to "provide" court-ordered services and if a court-ordered remedial service is "unavailable for any reason, including lack of funding," the Department must promptly notify the court. RCW 13.34.025(2)(c); RCW 13.34.136(2)(b)(vii).

The dependency order required J.W. obtain a DV assessment and follow through with any treatment recommendations. The Department referred J.W. to La Esperanza

for an assessment. J.W. completed the assessment, which recommended he engage in a 36-week DV treatment protocol. To attend the DV treatment, J.W. needed to pay using their sliding scale system based on income or request to receive funding through the Department. J.W. insisted he needed a "referral" for DV treatment, however Stark-Bell explained that La Esperanza only needed another referral if the Department was paying for the service. Stark-Bell then consulted her supervisor and determined that Department policy was to require parents to use the sliding pay scale for DV treatment unless funding was specifically ordered by the dependency court.

J.W. asserts that the Department refused to assist him in funding his DV treatment after he stated he needed help with payment. This assertion is not supported by the record. Stark-Bell testified she reached out to J.W. via e-mail and stated the Department could not authorize a referral for payment and that he needed to contact La Esperanza to discuss the sliding pay scale or consult his attorney if he has issues with that. Stark-Bell testified to providing multiple written documentations to both J.W. and his attorney, over many months, articulating the Department's stance about referral for this payment and that "we could certainly come to the table, or they could file a motion if there was continued disagreement about who bears the responsibility for payment of that service." J.W. never followed up with his attorney or Stark-Bell indicating he could not pay the sliding pay scale amount.

The trial court heard J.W.'s and Stark-Bell's testimony and found:

> [J.W.] participated in a domestic violence assessment at [La] Esperanza with Zoila Saritama. Ms. Saritama testified that her assessment reflected the standard recommendations for treatment based on domestic violence incidents, as well as made the suggestion that [J.W.] obtain a mental health assessment and engage in substance abuse treatment. She found

that he would benefit from Level Two Domestic Violence treatment. [J.W.] was made aware of her recommendations by Ms. Stark-Bell, once again through service letters, in person conversations, emails and text messages. Ms. Stark-Bell repeatedly utilized these same methods to advise [J.W.] that he needed to engage in domestic violence treatment, that he could begin at La Esperanza, and that if he had any problems accessing this service, he needed to bring it to her attention and to that of his attorney. Although [J.W.] raised that he couldn't access this service because Ms. Stark-Bell wouldn't make a referral for the service, testimony of Ms. Stark-Bell established that a referral was not necessary to engage in the service, and that [J.W.] had been clearly advised a referral was not necessary repeatedly.

[J.W.] just didn't want to do the domestic violence treatment. He was given plenty of opportunity to figure out how to get started, he just didn't do it, he didn't even try.

Substantial evidence supports the trial court's conclusion that J.W. did not properly request funding for DV treatment and that the Department did refer J.W. to DV treatment and provide avenues for his attendance. J.W. simply did not act with intention to attend.

J.W. also argues that the Department was required to pay for DV treatment. Again, we disagree.

RCW 13.34.025(2)(b) provides:

The department shall provide funds for remedial services if the parent is unable to pay to the extent funding is appropriated in the operating budget or otherwise available to the department for such specific services. As a condition for receiving funded remedial services, the court may inquire into the parent's ability to pay for all or part of such services or may require that the parent make appropriate applications for funding to alternative funding sources for such services.

While this section provides steps for the Department to take, it is triggered by a parent's direct action requesting funding from the Department. J.W. did ask about a referral, but when informed of his options for attending DV treatment through the sliding pay scale,

or by asking the court or Department for funding, he failed to act. Thus, the Department was not required to assess J.W.'s finances or consider Department funds to pay for the service.[4]

In determining that the Department offered J.W. all court-ordered services, including DV treatment, the court was specifically influenced by J.W.'s lack of effort over the course of the dependency. J.W. started nearly all the services required of him, but finished none of them. He started the Triple P parenting program twice during the dependency but never finished. J.W. attended Valley Cities cyclically and engaged in substance abuse treatment, but he never completed the program. He failed to begin mental health counseling and the record shows with substantial evidence that he failed to attend DV treatment.

While we agree that the Department could have done more to aid J.W. in receiving funding for DV treatment, the record demonstrates that the Department tried to assist J.W. for many years, through many services. Substantial evidence supports the trial court's finding that all elements of RCW 13.34.180 were proven by clear, cogent, and convincing evidence.

B. Right to Counsel

J.W. argues he was denied his right to counsel when he was deprived of constant and contemporaneous communications with his attorney because of the hybrid Zoom platform, counsel failed to seek an order forcing the Department to fund DV

---

[4] RCW 13.34.025(2)(c) states: "If court-ordered remedial services are unavailable for any reason, including lack of funding, lack of services, or language barriers, the department shall promptly notify the court that the parent is unable to engage in the treatment due to the inability to access such services." Again, J.W. was not clear in his inability to pay, thus his actions did not trigger the Department's obligation to notify the court.

treatment, and counsel's remote status prevented him from effectively helping him maintain a reasonable courtroom demeanor. We disagree.

In termination proceedings, RCW 13.34.090(2) grants parents the right to be represented by counsel and, if indigent, have counsel appointed at all stages of the proceeding. These protections derive from the due process protections of the Washington Constitution. WASH. CONST. art. I, § 3. A parent's right to be heard at a termination trial includes the right to be present, or if unable, the meaningful opportunity to be heard and defend through alternative procedures. In re Dependency of J.D.E.C., 18 Wn. App. 2d 414, 491 P.3d 224 (2021).

1. Consult with Counsel

J.W. argues first that he was denied his right to counsel when he was unable to continuously and contemporaneously consult counsel during trial because of the hybrid Zoom platform. We disagree.

Because of the COVID-19 pandemic and medical vulnerabilities, defense counsel was not present in the courtroom with J.W. during trial. J.W.'s counsel moved to continue the proceeding until he could be present because of due process concerns. The court denied the motion. To aid client and counsel communication, the court allowed J.W. to text or e-mail counsel during trial and allowed him to interrupt the trial to request a virtual conference with counsel.

In J.D.E.C., this court reviewed a Zoom termination trial and found that the procedures satisfied due process when the father could not access the Zoom platform and appeared instead by telephone. 18 Wn. App. 2d at 422. There, a party or attorney wishing to speak privately with the other was required to inform the court and consult via

-10-

a private, virtual breakout room.  J.D.E.C., 18 Wn. App. 2d at 417.  The father participated telephonically and most other parties participated via videoconference.  The court applied the Mathews[5] factors to determine whether a parent's due process rights were violated by the electronic court system.  J.D.E.C., 18 Wn. App. 2d at 418.  The court concluded the risk of error from the father being present by phone was slight and that he had a meaningful opportunity to be heard through assisting his attorney to present his case and direct his attorney on questions to ask in his testimony.  J.D.E.C., 18 Wn. App. 2d at 422-24.

Here, as in J.D.E.C., the court balanced the Mathews factors to weigh the competing interests.  J.W. was equipped with more access than the father in J.D.E.C.  J.W. had unfettered access to his attorney via cell phone and e-mail communication, he was in person to see the judge and witnesses, and he was offered unlimited ability to stop the trial and confer with his attorney through a private virtual breakout room with a laptop the court provided.

In In re Welfare of M.B., 195 Wn.2d 859, 467 P.3d 969 (2020), the Washington Supreme Court held that due process protects a parent's ability to participate in a termination trial even if the parent is incarcerated.  There, the court reversed because N.B. was absent for most of the trial due to lack of cooperation from the correctional facility.  But the court recognized the protections have limits, and approved of remote appearances by parents that allow consultation with their attorneys.  M.B., 195 Wn.2d at 872-77.  This case is factually distinct from M.B. because J.W. was present at the trial

---

[5] Under the Mathews factors, the court balances the: (1) private interests affected, (2) the State's interest in using the challenged procedures, and (3) the risk of erroneous deprivation of the private interests due to the procedures used.

and had consistent, real-time opportunities to discuss the case with his attorney. Both courts in J.C.E.D. and M.B. approved the electronic modifications as long as a client could be present (electronically or in person) and had access to their attorney. J.D.E.C., 18 Wn. App. 2d at 422-24; M.B., 195 Wn.2d at 872-77.

J.W. was not denied his right to effective counsel during the Zoom trial.

2. Ineffective Assistance of Counsel

J.W. argues that he was denied effective assistance of counsel. We disagree. To establish ineffective assistance of counsel, a parent needs to show deficient performance and resulting prejudice. In re Dependency of S.M.H., 128 Wn. App. 45, 61, 115 P.3d 990 (2005). The first prong requires a showing that counsel's representation "fell below an objective standard of reasonableness based on consideration of all of the circumstances." State v. Estes, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017). The second prong requires demonstrating there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

J.W. argues first that his counsel was ineffective when he failed, during the dependency, to move the court to compel the Department to pay for DV treatment. A termination trial is not an opportunity to relitigate dependency determinations. In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995). Dependency and termination require separate petitions, cause numbers, and appointments of counsel. In re Dependency Hiebert, 28 Wn. App. 905, 908-09, 627 P.2d 551 (1981). A claim of

ineffective assistance of counsel on appeal pertains to the termination proceedings, not the attorney's actions during dependency.

J.W. next argues he received ineffective assistance of counsel because his attorney's absence from the room prevented him from aiding J.W. in maintaining a reasonable courtroom demeanor. We disagree.

At various times during the trial, J.W. made comments under his breath while witnesses were testifying, interrupted the court, and left the courtroom because of his emotional state. But while it is an attorney's responsibility to aid a client in courtroom demeanor, the attorney's absence is not grounds for ineffective assistance of counsel and reversal. Simply, J.W. cannot show prejudice. Termination hearings are often emotional and the trial court did not fault J.W. for his agitation during trial past asking him to refrain and allow witnesses to testify. The trial court used 12 pages explaining the many reasons why termination was appropriate because of J.W.'s inability to comply with court recommended services throughout the dependency. J.W.'s courtroom demeanor and actions were not a reason. The trial court did not discuss his courtroom demeanor in its ruling orally either. J.W. has not met the prejudice prong required of an ineffective assistance of counsel claim.

Affirmed.

_____
Mann, C.J.

WE CONCUR:

_____    _____
Bremner, J.                Coburn, J.

-13-